IN THE MATTER OF THE SEVERAL ACCOUNTINGS OF DAVID HAWLEY, AS GUARDIAN AND TRUSTEE OF ADAM MORTIMER SINGER, ETC.

*Surrogate — power to open decrees — Code of Civil Procedure, sec. 2481, sub. 6 — intermediate accounting by a guardian or trustee — no decree can be entered by the surrogate.*

David Hawley acted as testamentary guardian and trustee of Singer from October 31, 1877, to November 5, 1884, when Singer became of age. During this time the accounts of Hawley were, upon his application, twice passed in the Surrogate's Court and decrees allowing such accounts were entered in that court on December 30, 1878, and January 10, 1881. After Singer came of age, and while proceedings instituted by Hawley for a final accounting were pending, Singer presented a petition to the surrogate praying that the former decrees might be vacated and opened so as to enable the petitioner to contest the amount of the commissions and other allowances made therein to the said Hawley. The petitioner was represented on the previous accountings by the clerk of the Surrogate's Court, who acted as his guardian *ad litem*.

*Held,* that the surrogate erred in denying the petition.

That power to grant the application was conferred upon him by subdivision 6 of section 2481 of the Code of Civil Procedure.

That the fact that the infant was represented upon the former hearing, or that the error alleged was one of law only, was not an insuperable bar to the application.

That the decrees should be set aside for the further reason that the surrogate had no power to render them, as the accountings were intermediate and not final accountings, and as no authority to enter any decree in intermediate accountings instituted upon the application of the guardian or trustee is conferred by the Code of Civil Procedure.

APPEAL from an order of the Surrogate's Court of Westchester county, denying a petition of Adam Mortimer Singer, to have certain decrees theretofore made vacated and opened.

On January 10, 1876, David Hawley, of Yonkers, qualified as

executor of the will of Isaac M. Singer, deceased. Under that will he became the testamentary guardian and trustee of several of the children of the deceased, and among others of Adam Mortimer Singer.

On the 31st of October, 1877, Mr. Hawley passed his accounts as executor, and a decree was made on that accounting directing a distribution of the estate in his hands; a part of which estate came to him as testamentary guardian and trustee of Adam M. Singer.

Afterwards, in the Surrogate's Court, Mr. Hawley passed his accounts as such testamentary guardian and trustee, and upon such accountings decrees were made — one on December 30, 1878, and another on the 10th day of January, 1881.

After Adam Mortimer Singer attained his majority, and on November 5, 1884, Mr. Hawley filed a final account, of which he prayed a settlement. The ward filed objections to that account. Thereafter the ward filed a petition, addressed to the surrogate, referring to the decrees upon the various accountings and asking that they might be opened, vacated, modified or set aside so far as to permit the petitioner to contest the allowance of commissions made to Mr. Hawley, as executor and as guardian and trustee, upon the manufacturing stock and also allowances of money'; and so far also as to allow the ward to contest certain directions contained in such decrees and the distribution of the proceeds of realty, and the allowance of commissions to Mr. Hawley upon the United States bonds and other items. Mr. Hawley filed a written answer to this petition, controverting some of its most important allegations; and upon these papers the application to open the decrees was brought to a hearing before the surrogate December 12, 1884. The surrogate denied the application. Upon the prior accounting the clerk of the Surrogate's Court was appointed and acted as guardian ad litem for the infant.

C. E. Tracy, for Adam Mortimer Singer, appellant.

F. N. Bangs, for guardian and trustee, respondent.

PRATT, J. :

We have the same power upon this appeal as the surrogate had upon the original application, and his determination is to be

reviewed as if the original application was made to this court. (Code, § 2481, sub. 6.) The application should have been granted. Subdivision 6 of section 2481 was intended to give to the surrogate a broader jurisdiction than he possessed before the enactment of the present Code. (See notes to the section in Throop's Code.) This jurisdiction is not limited by subdivision 11 of section 3347. That provision applies solely to the mode of procedure. It has no application to the power given to the surrogate by section 2481. That is general, and may be exercised with reference to all decrees or orders, whether made before or after September 1, 1880. By section 2482 the provisions of chapter 18, relating to the jurisdiction of the Surrogate's Court, are expressly made applicable to all estates, whether the decedent died before or after that chapter took effect. The petition shows sufficient cause for setting aside the decree and allowing the petitioner to be heard upon the question of the guardian's fees. The fact that the infant was represented upon the hearing before the surrogate, or that the error alleged is purely one of law, is not an insuperable bar. The rule that the remedy for an error in law when the party was represented on the trial or hearing, is by appeal only, is well applied when the party aggrieved is an adult and selects his own counsel, or when being an infant, the question has been fairly presented to and decided by the court, but when being an infant it is apparent that the claim made against him has no authority in law to support it, and that the guardian has wholly neglected the infant's interests, the rule cited can have no application.

The power to set aside or reopen decrees for reasons of this character is inherent in a court of equity, and is a matter of common and frequent exercise; and the power conferred by the Code upon the Surrogate is to be exercised in like cases and in the same manner as a court of general jurisdiction exercises such power. (Sec. 2481.) It cannot be doubted that the Supreme Court has power to vacate and set aside its own decree under circumstances similar to those presented in this proceeding; such a power is absolutely essential to the due administration of justice. (*Sipperly* v. *Baucus*, 24 N. Y., 46, and cases cited.) The surrogate had, however, no power to render the decrees in question, and for that reason, if none other existed, they must be set aside. The

accounting appears to have been had upon the petition
of the guardian. Upon presentation of the petition to the surro-
gate a citation was issued, and upon the return of such citation
the same proceedings were had as would have been had upon a
judicial settlement of the guardian's accounts. We do not find in
the Code any authority whatever for these proceedings. The pro-
visions of the Code regulating the accounting of testamentary
trustees are to be found in title 6, chapter 18, and those relating to
the accounting of testamentary guardians in title 7, article 3, chapter
18. Referring now to testamentary guardian, it is provided by sec-
tion 2856, that a judicial settlement of such guardian's accounts
may be had in the same cases in which a guardian appointed by the
surrogate may have a judicial settlement of his account. Such pro-
ceedings are provided for in sections 2847 and 2850, and can be had
only when the ward has attained his majority or a successor to the
guardian has been appointed.

Turning now to the provisions regulating the judicial settlement
of the accounts of testamentary trustees, it is provided in section
2810 that such settlement may be had on the petition of the trustee
when one year has expired since the probate of the will, or when
the trusts have been or are ready to be fully executed, and such
accounting contemplates a distribution of the trust fund. It is
apparent that these provisions have no application to the case under
consideration, and that whether we regard Mr. Hawley as a testa-
mentary trustee or a testamentary guardian, he was not at the time
of the presentation of his several petitions to the surrogate entitled
to a judicial settlement of his accounts. It is further provided,
however, by section 2802, that a testamentary trustee may at any
time file an "intermediate account" with the surrogate having juris-
diction of the estate; and substantially the same provision is con-
tained in section 2855 in reference to testamentary guardians. By
section 2514, subdivision 9, the expression "intermediate account,"
is defined to be "an account filed in the surrogate's office for the
purpose of disclosing the acts of the person accounting and the
condition of the estate or fund in his hands, and not made the sub-
ject of a judicial settlement," and by subdivision 8 a "judicial settle-
ment" is defined to be "a decree of the Surrogate's Court whereby
the account is made conclusive upon the parties to the special pro-

ceeding, either for all purposes or for certain purposes specified in the statute."

I have now referred to all the provisions of the Code relating to accountings or settlements of accounts of guardians or trustees. From these citations it appears there are two classes of accountings provided for. The first are " intermediate " or to be made during the execution of the trust. Upon such accounting no decree is required, and the surrogate has no jurisdiction to make any. There is no authority for the citation of the beneficiary and no jurisdiction to make any order that will conclude any person interested in the trust Such accounts are intended solely as landmarks along the line of the execution of the trust, and are solely for the information of the beneficiaries and not for the benefit in any way of the trustee. The second are judicial settlements of accounts, and are had upon notice to all parties interested and contemplate a trial, a judicial determination and a judgment ; they are conclusive upon all who have notice, but they can be instituted in such a case as the one under consideration, only after the ward arrives at the age of twenty-one years. As all the proceedings before the surrogate were had during the infancy of the ward, there was no case made for a judicial settlement of the guardian's accounts. The surrogate had no jurisdiction to make any decree that would conclude the infant, and the decrees entered by him were without authority and are as to the infant void.

The decrees should be vacated and set aside, with costs to be paid by the guardian personally.

Present — BARNARD, P. J.; DYKMAN and PRATT, JJ.

Decrees vacated, with costs to be paid by guardians personally.